```
                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
                    (EASTERN DIVISION - RIVERSIDE)




UNITED STATES OF AMERICA,        )    CASE NO: 5:25-mj-00533
                                 )
               Plaintiff,        )          CRIMINAL
                                 )
      vs.                        )    Los Angeles, California
                                 )
FRANCISCO JAVIER LONGORIA,       )    Thursday, August 28, 2025
                                 )
               Defendant.        )    (3:24 p.m. to 3:47 p.m.)
_____)
```

                        INITIAL APPEARANCE

               BEFORE THE HONORABLE A. JOEL RICHLIN,
                  UNITED STATES MAGISTRATE JUDGE

**APPEARANCES:**              SEE PAGE 2


Court Reporter:          Recorded; CourtSmart

Courtroom Deputy:        Dana Castellanos

Interpreter:             Mylene Green
                         Spanish Language

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES FOR:**

Plaintiff:                    AUSA CORY BURLESON
                              U.S. Attorney's Office
                              3403 Tenth Street
                              Suite 200
                              Riverside, CA 92501


Defendant:                    DFPD LUISA P. TAMEZ
                              Federal Public Defender's Ofc.
                              321 East 2nd Street
                              Los Angeles, CA 90012

3

1        **Los Angeles, California; Thursday, August 28, 2025; 3:24 p.m.**

2                                **--oOo--**

3              **THE CLERK:**  Calling Case No. 5:25-mj-533, *United*

4     *States of America versus Francisco Javier Longoria*.  Counsel,

5     your appearances please?

6              **MR. BURLESON:**  Good afternoon again, Your Honor, Cody

7     Burleson for the United States.

8              **THE COURT:**  Good afternoon.

9              **MS. TAMEZ:**  Good afternoon, Your Honor, Luisa Tamez

10    on behalf of Mr. Francisco Javier Longoria who is present in

11    court and appearing with the assistance of a Spanish

12    interpreter.

13             **THE COURT:**  Good afternoon to you, Ms. Tamez, and to

14    you, Mr. Longoria.  Do you go by Longoria or Javier Longoria?

15             **THE DEFENDANT:**  Francisco Longoria.

16             **THE COURT:**  Okay.  So I'll just go with Mr. Longoria

17    then.  Can I ask the interpreter to state her appearance for

18    the record?

19             **THE INTERPRETER:**  Yes, Your Honor.  Mylene Green,

20    federally certified interpreting for Mr. Francisco Javier

21    Longoria.

22             **THE COURT:**  Great, thank you, Ms. Green, for your

23    help today.

24             So, Mr. Longoria, if at any point during the hearing

25    today you're not understanding what's being said, will you

4

1  please raise your hand and let me know?

2          **THE DEFENDANT:**  Yes, thank you.

3          **THE COURT:**  Okay.  So, Mr. Longoria, we're here today

4  because you have been charged by the United States with a

5  felony through a document called a complaint.  What I'm going

6  to do is I'm going to start by reviewing some of the paperwork

7  that I received from you and your attorney, then I'll have some

8  questions for you and then we'll talk about your case a little

9  bit.  Okay?

10          **THE DEFENDANT:**  Yes, that's fine.

11          **THE COURT:**  All right.  So the first document I

12  received from you and your attorney is your financial

13  affidavit.  Having reviewed that, I find that you are eligible

14  for the appointment of counsel at no cost and I will appoint

15  Ms. Tamez of the Federal Public Defender's Office to represent

16  you in this case.

17          The next document I'm going to review from you is

18  called the advisement of defendant's statutory and

19  constitutional rights.  I'm holding up my copy.  This document

20  describes your rights as a criminal defendant under federal law

21  and the United States Constitution.  It looks like you signed

22  on the second page; is that correct, did you sign this

23  document?

24          **THE DEFENDANT:**  Yes, I did, I signed it.

25          **THE COURT:**  Before signing this document, did you

1  have it read to you by a Spanish language interpreter?

2          **THE DEFENDANT:**  Yes.

3          **THE COURT:**  And do you feel like you understand your

4  rights as contained in the document?

5          **THE DEFENDANT:**  Yes.

6          **THE COURT:**  Do you have any questions for me about

7  what your rights are?

8          **THE DEFENDANT:**  No, everything is fine.

9          **THE COURT:**  Okay.  Ms. Tamez, did you also sign this

10  document?

11          **MS. TAMEZ:**  Yes, Your Honor.

12          **THE COURT:**  Having had an opportunity to talk with

13  your client, do you agree that he understands his rights?

14          **MS. TAMEZ:**  I do, Your Honor.

15          **THE COURT:**  And it looks like a Spanish language

16  interpreter, Ms. Bianchi translated this document for him; is

17  that correct?

18          **MS. TAMEZ:**  That's correct, Your Honor.

19          **THE COURT:**  Okay.  All right.  Mr. Longoria, the next

20  document I'm going to review is your assertion of Fifth and

21  Sixth Amendment rights and that I'm holding up.  So I'll just

22  acknowledge for the record, you do have the right under the

23  Fifth Amendment to remain silent, you can say nothing at all

24  and you have the right under the Sixth Amendment to the

25  effective assistance of counsel and I have appointed Ms. Tamez

```
 1   of the Federal Public Defender's Office to represent you in

 2   this case.

 3          Okay.  One of the rights you have, you've been

 4   charged by complaint, so you're entitled to something called a

 5   preliminary hearing.  A preliminary hearing is a hearing at

 6   which the Government would be required to present evidence to

 7   establish probable cause to support the allegations against

 8   you.

 9          Ms. Tamez, my understanding is you want to go ahead

10   and schedule a preliminary hearing in this case; is that

11   correct?

12          MS. TAMEZ:  That's correct, Your Honor.

13          THE DEFENDANT:  Yes.

14          THE COURT:  Okay.  All right.  Then I'm going to

15   schedule a preliminary hearing and a date for post indictment

16   arraignment.  The preliminary hearing will be on Thursday,

17   September 18, 2025 at 4:30 p.m. in this courtroom.  The post

18   indictment arraignment date which will be an appearance like

19   this after the point at which you're indicted, if you are later

20   indicted, Mr. Longoria, that will be on September 23, 2025 at

21   10 a.m. in this courtroom.

22          Okay.  So let's talk about the charges against you,

23   Mr. Longoria.  As I mentioned, you are charged through a

24   document called a complaint.  I'm holding up my copy of the

25   complaint.  Have you and your attorney received a copy of this
```

7

1  complaint?

2          **THE DEFENDANT:**  Yes, I do have that.

3          **THE COURT:**  And have you had the opportunity to

4  discuss that with your attorney and with the assistance of a

5  Spanish language interpreter?

6          **THE DEFENDANT:**  Yes, it's fine.

7          **THE COURT:**  And I'm not asking you if you agree with

8  the allegations in the complaint, instead my question is, do

9  you know what the Government is accusing you of?

10          **THE DEFENDANT:**  The attorney told me what I was being

11  accused of.

12          **THE COURT:**  Okay.  Do you have any questions for me

13  about what the allegations against you are?

14          **THE DEFENDANT:**  No.

15          **THE COURT:**  Okay.  And then, of course, if you do

16  have any questions in the future, you have a copy of this

17  complaint you can review with your attorney at your leisure and

18  you can always ask her any follow up questions.

19          Ms. Tamez, having had an opportunity to talk with

20  your client, do you agree that he understands the nature of the

21  allegations against him?

22          **MS. TAMEZ:**  Yes, Your Honor.

23          **THE COURT:**  Okay.  So, Mr. Longoria, what I'm going

24  to do now because this is your first appearance before me on

25  these charges is I'm going to instruct the Government pursuant

1  to a law called the Due Process Protections Act.  That's a law

2  specifically designed to protect criminal defendants such as

3  yourself.  Therefore, Mr. Burleson, pursuant to the Due Process

4  Protections Act and Central District General Order 21-02 the

5  Court will order the Government to comply with the disclosure

6  obligations under Brady v Maryland and its progeny.  And the

7  Court reminds the Government of the possible consequences of

8  not doing so.

9          Those are consequences include the exclusion of

10  evidence, adverse jury instructions, dismissal of charges,

11  contempt, referral to a disciplinary authority and sanctions.

12  Does the Government understand its obligations and agree to

13  comply?

14          **MR. BURLESON:**  We do, Your Honor.

15          **THE COURT:**  Okay.  Thank you.

16          All right.  The Court has received from the

17  Government a notice of request for detention, is the Government

18  still seeking detention in this matter?

19          **MR. BURLESON:**  We are, Your Honor.

20          **THE COURT:**  Okay.  And, Ms. Tamez, is the defense

21  ready to proceed with a detention hearing today?

22          **MS. TAMEZ:**  Yes, Your Honor.

23          **THE COURT:**  Okay.  And have the parties reached any

24  agreement on the Government's request that I should be aware

25  of?

 1          **MS. TAMEZ:**  No, Your Honor.

 2          **THE COURT:**  Okay.  So, Mr. Burleson, why don't you go

 3   forward and present your motion.

 4          **MR. BURLESON:**  Thank you, Your Honor.

 5          At the outset, I'll just tell Your Honor, the

 6   Government proffers the complaint and the pretrial services

 7   report but not its recommendation for bond.

 8          Your Honor, first, the Government is entitled to a

 9   detention hearing here on the basis of serious risk of flight.

10   As detailed in the complaint when immigration officers

11   attempted to stop Mr. Longoria during a traffic stop, the

12   complaint sets out facts that suggest Mr. Longoria rolled the

13   windows up as the immigration officers approached.

14          Then after not complying with their request for him

15   to roll the windows down, the officers proceeded to break the

16   windows and then after that, Mr. Longoria fled from the

17   incident and in the course of doing so, as alleged in the

18   complaint, he -- his vehicle hit two officers.

19          So first, Your Honor, I certainly think the

20   Government is entitled to the detention request based on

21   serious risk of flight given that when the immigration officers

22   attempted to detain and question Mr. Longoria, he fled from

23   them.

24          Moving on, Your Honor, to whether or not conditions

25   can be set, again Your Honor, I will note and make the same

1  arguments for a risk of flight, given that he has fled from --

2  he did flee from the officers.  In addition to that, Your

3  Honor, he is not -- Mr. Longoria is not here in the United

4  States legally.  He has, according to pretrial services report,

5  family ties to Mexico and that he does also have family ties to

6  the United States.  So I think that was probably a wash.

7          But given, Your Honor, both the flight from officers,

8  as well as the alleged conduct in injuring the officers or

9  sorry, in assaulting the officers, the Government is seeking

10  detention and believes detention is warranted.

11          **THE COURT:**  Okay.  Do you have any information on the

12  nature of the injuries, if any, sustained by the officers?

13  Because it wasn't really clear from the complaint.

14          **MR. BURLESON:**  Your Honor, I don't have anything

15  beyond what's in the complaint.  And I misspoke, if I said

16  injuries, I did say injuries, and corrected myself as to just

17  the alleged assault.  I'm not aware of any injuries -- I'm not

18  aware if the officers sustained any injuries.

19          **THE COURT:**  Okay.  So there's no proffer of any

20  injury actually being sustained by the officers?

21          **MR. BURLESON:**  That's correct, Your Honor.  There may

22  have been, I'm just not aware of any.

23          **THE COURT:**  Okay.  Yeah.  So for purposes of today,

24  it didn't happen because it hasn't been proffered, so.

25          Let me ask you another question, you mentioned that

1   this started at -- you called it a traffic stop.  That's not

2   what the complaint says.  Was this a traffic stop and what does

3   that mean?  The complaint says, that immigration officials

4   attempted to stop Mr. Longoria's vehicle to conduct an

5   immigration check.  And I don't know what that is.

6        **MR. BURLESON:**  So, Your Honor, you're right in that

7   it was not technically a traffic stop.  They -- it's my

8   understanding again and again I apologize for misstating.  They

9   were attempting to conduct a compliance check or a -- I have

10  the information that's in the complaint, Your Honor, so I don't

11  know of there being any -- traffic stop was an incorrect -- as

12  the traffic stop being a term of art, I don't believe there was

13  a traffic stop.

14        **THE COURT:**  Right.

15        **MR. BURLESON:**  They were attempting to interview or

16  question Mr. Longoria and as I said, as they approached, that's

17  when the windows were rolled up.

18        **THE COURT:**  Okay.  But then based on the complaint

19  and I have the information you have, I don't see an allegation

20  that there was an lawful basis to stop the vehicle.

21        **MR. BURLESON:**  May I have a moment, Your Honor?

22     **(Pause)**

23        **THE COURT:**  I mean, it just wasn't alleged.

24        **MR. BURLESON:**  That's correct, Your Honor, and again

25  other than what's in the complaint, I don't have additional

1    information at this time.

2            **THE COURT:**  Okay.  Is there anything you want to say

3    about Mr. Longoria's lack of criminal history?

4            **MR. BURLESON:**  Other than noting that I don't believe

5    there is.

6            **THE COURT:**  Yes, and so that would weigh heavily in

7    favor of bond is my --

8            **MR. BURLESON:**  So I think, Your Honor, the lack of

9    criminal history would go to a danger to the community.  The

10   Government is not seeking -- well, other than the alleged

11   crimes, I do not think that necessarily the -- the nature of

12   the crimes are alleged assault on federal officers, so there is

13   some risk of danger to the community.  However, I do think the

14   stronger argument here for the Government would be risk of

15   flight.

16           **THE COURT:**  Okay.  Ms. Tamaz?

17           **MS. TAMEZ:**  Yes, Your Honor.  The Government has not

18   established that it's entitled to a detention hearing in this

19   case and we would request Mr. Longoria's release on his own

20   recognizance.

21           Your Honor, the Government in order to be entitled to

22   a detention hearing must show that this is a serious risk of

23   flight in this case.  The Government points to the allegations

24   in the complaint, however, first I'd point out that those are

25   simply allegations at this point, for which he is presumed

1    innocent.

2            Second, as the Court itself has noted, there is no

3    allegation in the complaint that there was a lawful basis for

4    the stop, rather as you've seen in the video, included in the

5    Government's own complaint, two unmarked vehicles with no

6    emergency lights suddenly approach Mr. Longoria's truck,

7    surrounded him, they presented no warrant.  They did not have

8    any indication of what law enforcement agency they were from

9    and they then began battering his windows, breaking both the

10   driver side window and the passenger side window.

11           **THE COURT:**  Can I stop you there?  There is an

12   allegation in the complaint about some sort of emergency light

13   or something.  Let me find it.

14           It says that both Government vehicles activated their

15   emergency equipment.  I guess I would assuming it was a light.

16   What do you understand?

17           **MS. TAMEZ:**  From what I saw in the video, Your Honor,

18   it just seemed like two white trucks drove up next to his

19   vehicle.

20           **THE COURT:**  Okay.

21           **MS. TAMEZ:**  And if I'm misremembering, I apologize,

22   but from my recollection of the video, it seems as though two

23   vehicles not conducting any traffic stop just approached

24   Mr. Longoria's truck.

25           **THE COURT:**  So emergency equipment could have been

1  like a loud speaker or something, I don't know.  Okay.

2          **MS. TAMEZ:**  Yes, Your Honor.

3          So the allegation that he then fled from law

4  enforcement does not support this argument that he poses a

5  serious risk of flight, in light of the circumstances, in light

6  of the fact that these vehicles with no warrant, with no clear

7  indication of what agency they may be from, in light of the

8  heightened community fear does not indicate that Mr. Longoria

9  would pose a serious risk of flight such that he would

10  intentionally avoid appearing in court.  And again whether --

11  the allegations in the complaint do not bear on whether or not

12  he would return to court.

13          As to a risk of flight, Your Honor, I'd also note

14  that there's approximately 30 community members present in the

15  courtroom supporting Mr. Longoria.  These include his United

16  States' citizen children, his cousins, his in-laws and multiple

17  other community members here supporting him ensuring that his

18  rights are preserved and also guaranteeing that he will return

19  to address this matter to the Court.

20          So for those reasons, we don't believe the Government

21  is entitled to a detention hearing.  However, if the Court were

22  to find the Government is entitled to a detention hearing,

23  again I would note this not a presumption case.  Liberty is the

24  norm.  Pretrial detention is a carefully limited exception,

25  again even when considering detention the first question is

1   whether personal recognizance or an unsecured bond is

2   appropriate before getting into bond conditions.

3          Here, under the 3142(g) factors, Mr. Longoria has had

4   ties to the United States for 23 years.  He has been married

5   for 24 years.  He and his wife are both homeowners.  They lived

6   in this home that they own together for eight years.  His name

7   is on the property.  He's filed taxes every year.  The pretrial

8   services report notes that he has a valid driver's license.

9   They have three United States children who live with them and

10  he's also gainfully employed in two jobs, at a warehouse in

11  Bloomington and at a restaurant in Highland.  And when he's not

12  working there, he also is self-employed delivering party

13  equipment.

14         As the Court has also noted, he has absolutely no

15  criminal history, no -- not even any arrests or allegations of

16  any conduct.  So in this matter, it is appropriate, Your Honor,

17  to set release on Mr. Longoria's own recognizance.

18         **THE COURT:**  Okay.  And if I were inclined to follow

19  the recommendations of pretrial services, which is a $5,000

20  surety bond without justification, I know pretrial talked -- I

21  don't know if Ms. Longoria is here.

22         **MS. TAMEZ:**  His daughter, Your Honor, yes, she is.

23         **THE COURT:**  Oh, is Ms. Longoria, the daughter, the

24  $1,000 surety or is that his wife?

25         **MS. TAMEZ:**  His daughter would be who we would

16

proffer as a surety, Your Honor.

      **THE COURT:** Oh, understood.  She's an adult.  How is she?

      **MS. TAMEZ:** Yes, Your Honor, she's 22.

      **THE COURT:** Okay.  Is she here?

      **MS. TAMEZ:** Yes, Your Honor.

      **THE COURT:** Do you mind if we chat for a second?  I always ask anyone who's going to be a surety to chat, I don't mean to single you out, but do you mind coming forward?

      So I just want to chat since we're talking about having you potentially be a surety and I want to make sure you know what that is.  I'm sure you talked to Ms. Tamez, but I still want to talk to you.

      So what we're talking about is potential release for your father and -- on certain conditions and in order him to motivate him to comply with those conditions we have a surety bond where you're basically agreeing to put up money.

      The way an unjustified surety bond works is you don't actually have to pay the money up front.  You would only have to pay the money if your father violates the conditions of release.  So you don't have to have the money today, but if he violates the conditions of release, the Government can seek to take the money from you.  They can garnish your future wages, they can take assets of yours, they can wait ten years if they feel like it, when you finally have the money and take it then.

17

1  They can be very patient.

2           So it's a very serious commitment, but you don't have

3  to have the money up front.  Does that make sense?

4           **MS. LONGORIA:**  Yes.

5           **THE COURT:**  Okay.  And so do you know what your

6  father is accused of?  He is, of course, presumed innocent, but

7  he is accused of a serious crime.  Do you know what the crime

8  is?

9           **MS. LONGORIA:**  Yes.

10          **THE COURT:**  Okay.  And understanding all that, are

11 you still willing to be a surety bond?

12          **MS. LONGORIA:**  Yes.

13          **THE COURT:**  Okay.  And if it needed to be $5,000

14 would you be willing to sign a bond for $5,000?

15          **MS. LONGORIA:**  Yes.

16          **THE COURT:**  Okay.  Thank you.  You can sit down.

17          Okay.  Well, so I will find that the Government is

18 entitled to a detention hearing given the flight and serious

19 allegations, though I am inclined to set bond given the lack of

20 criminal history and the circumstances of the allegations.  You

21 know, I'll note that the Government relies on this video as

22 part of their evidence for the complaint, I watched the video

23 and I frankly was confused, and you know, the video is from

24 Mr. Longoria's perspective.  From his perspective, it's quite

25 scary and anyway, it's hard to tell what's going on from his

18

1    perspective.

2            So under the circumstance I am inclined to set bond.

3    Mr. Burleson, any -- do you have any -- would the Government

4    like any additional bond, any other conditions of bond that

5    aren't proposed by pretrial services?

6            **MR. BURLESON:**  No, Your Honor.

7            **THE COURT:**  Okay.  So, Mr. Longoria, this is

8    apparently an ICE detainer on you.  So I'm going to set

9    conditions of bond and I should say for the family and friends

10   as well, I suppose it's very likely that you're not released,

11   the Government has the right to exercise that detainer.  And

12   they could seek to remove you immediately.  The circumstances

13   here are not the same as some of our other cases, so I don't

14   know what they'll do, but all I can do is set bond.  I think

15   you're entitled to it.  So I'll do that, but the Government is

16   then entitled to do what it wants to do and it may choose not

17   to release you.

18           So I'm going to set the conditions as set forth in

19   the pretrial services verbatim, so we don't need to go through

20   all of them.  But if your daughter signs the surety bond today,

21   is there a passport that needs to be surrendered, Ms. Tamez?

22           **MS. TAMEZ:**  Your Honor, I'd rather not comment as to

23   the record.

24           **THE COURT:**  Okay.  I was just going to set a

25   deadline.

```
 1              MS. TAMEZ:  Yes, please, Your Honor.

 2              THE COURT:  Okay.  Here's what I'll do.  I'll set --

 3    I won't require that for release on bond.  I'll give you a two

 4    week deadline.  So what's two weeks from today?

 5              THE CLERK:  September 11th.

 6              THE COURT:  Okay.  So by September 11th that would

 7    need to be either an affidavit that you don't have a passport

 8    or you need to surrender the passport by 9/11, but I'm not

 9    going to require that in order for him to be released on bond.

10    I'm only going to require the daughter to sign the $5,000

11    affidavit of surety.  And so if that happens, and then if he's

12    deported, then the passport thing just doesn't matter.

13              MS. TAMEZ:  Yes, Your Honor.

14              THE COURT:  But if he is released and he remains on

15    bond, then he needs to surrender that.

16              MS. TAMEZ:  Yes, Your Honor.

17              THE COURT:  Okay.  Anything else from the parties?

18    Any questions?

19              MR. BURLESON:  Not from the Government, Your Honor.

20              MS. TAMEZ:  Your Honor, if the Court is willing,

21    given the ICE hold, I would ask if Mr. Longoria would be able

22    to hug his children who are present.

23              THE COURT:  How many children are there?

24              MS. TAMEZ:  I believe two of his children are

25    present.
```

20

1          **THE COURT:**  It's fine with me, if the marshals are

2   okay with it.  Or maybe, marshals, if you want to talk to the

3   children and just make sure they're not, you know, not sneaking

4   anything to him, that kind of thing.

5          **THE MARSHAL:**  Yeah, that's fine.

6          **THE COURT:**  Okay.  So maybe we can get some of the

7   folks to start clearing out of the courtroom to give

8   Mr. Longoria space and safety with the marshals that would

9   probably help.

10          **MS. TAMEZ:**  Yes, Your Honor.

11          **THE COURT:**  So good luck to you, Mr. Longoria, I

12   don't know what's going to happen next, but I wish you good

13   luck.

14          **THE DEFENDANT:**  Thank you very much.

15          **THE CLERK:**  You have a question?

16          **THE COURT:**  Yeah, I'm sorry?

17          **MR. CRYER:**  Just for clarification, for the passport

18   commission on this (inaudible) that is checked off, but he has

19   to surrender it so that (inaudible).

20          **THE COURT:**  So he has to surrender it by 9/11.  He

21   can be released before it's surrendered.  Yeah.

22          **MR. CRYER:**  And it's forthwith, right?

23          **THE COURT:**  Forthwith, yes.  The only condition

24   before release is the surety bond.

25          **MR. CRYER:**  Okay.  Thank you, Your Honor.

(Proceedings concluded at 3:46 p.m.)

* * * * *


<u>CERTIFICATION</u>


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.



_____                    <u>September 8, 2025</u>
         Signed                                        Dated


*TONI HUDSON, TRANSCRIBER*